**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

───────────────────────────────

SCOTT PHILLIP LEWIS,

                              Plaintiff,

              v.

ESSEX COUNTY, NEW YORK, et al.,                    No. 8:24-CV-00100
                                                   (MAD/CFH)

                              Defendants.

───────────────────────────────

**APPEARANCES:**

Scott Phillip Lewis
1936 Saranac Avenue
#3, PMB 411
Lake Placid, New York 12946
Plaintiff pro se

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER

### I. In Forma Pauperis

        Plaintiff pro se Scott Lewis ("plaintiff")[1] purported to commence this action on

January 19, 2024, by filing a complaint.  See Dkt. No. 4 ("Compl."); see also Dkt. No. 1.

───────────────────────

[1] The undersigned notes that plaintiff is a particularly litigious individual who has filed numerous other actions that are presently pending in this District, as well as others.  See, e.g., Lewis v. Town of Elizabethtown, 8:24-CV-00535 (AMN/DJS) (N.D.N.Y. filed Apr. 18, 2024), Dkt. No. 5 (Report-Recommendation recommending dismissal pending review); Lewis v. Adirondack Med. Ctr., 1:24-CV-00376 (BKS/TWD) (N.D.N.Y. filed Mar. 19, 2024), Dkt. No. 4 (Report-Recommendation recommending dismissal pending review); Lewis v. Paymaster Payroll Sys., Inc., 8:24-CV-00121 (MAD/DJS) (N.D.N.Y. filed Jan. 25, 2024), Dkt. No. 9 (dismissing complaint and entering judgment in favor of the defendants); Lewis v. Walsh, 8:24-CV-00098 (GTS/CFH) (N.D.N.Y. filed Jan. 21, 2024), Dkt. No 5 (Report-Recommendation recommending dismissal with prejudice and without leave to amend pending review); Lewis v. Despos, LLC, 8:24-CV-00079 (AMN/CFH) (N.D.N.Y. filed Jan. 17, 2024), Dkt. No 7 (Report-Recommendation recommending dismissal without prejudice but without leave to amend pending review); Lewis v. R. L. Vallee, Inc., 8:24-CV-00069 (AMN/DJS) (N.D.N.Y. filed Jan. 16, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); Lewis v. Affiliated Enter. Sol., LLC, 8:24-CV-00061

In lieu of paying this Court's filing fee, he submitted an application for leave to proceed in forma pauperis ("IFP").  <u>See</u> Dkt. Nos. 2, 5.  The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP.[2]

## II. Initial Review

## A. Legal Standard

28 U.S.C. § 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or

---

(BKS/DJS) (N.D.N.Y. filed Jan. 15, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); <u>Lewis v. Redline Hockey, LLC</u>, 8:24-CV-00068 (BKS/DJS) (N.D.N.Y. filed Jan. 15, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); <u>Lewis v. Citizens United, Inc.</u>, 8:24-CV-00029 (TJM/DJS) (N.D.N.Y. filed Jan. 8, 2024), Dkt. No. 22 (dismissing complaint with leave to amend); <u>Lewis v. Adirondack Med. Ctr.</u>, 8:24-CV-00027 (BKS/DJS) (N.D.N.Y. filed Jan. 7, 2024), Dkt. No. 17 (dismissing complaint with leave to amend); <u>Lewis v. Onondaga Cnty.</u>, 8:24-CV-00013 (GTS/DJS) (N.D.N.Y. filed Jan. 3, 2024), Dkt. No. 21 (dismissing complaint with prejudice); <u>Lewis v. Franklin Cnty.</u>, 8:23-CV-01647 (DNH/CFH) (N.D.N.Y. filed Dec. 28, 2023), Dkt. No. 10 (Report-Recommendation recommending partial dismissal pending review); <u>Lewis v. Essex Cnty.</u>, 8:23-CV-01636 (TJM/CFH) (N.D.N.Y. filed Dec. 26, 2023), Dkt. No. 9 (Report-Recommendation recommending dismissal pending review); <u>Lewis v. Williamson Cnty.</u>, 1:24-CV-00461 (ADA) (W.D. Tex. filed Apr. 25, 2024), Dkt. No. 3 (dismissing complaint with prejudice as malicious); <u>Lewis v. Williamson Cnty.</u>, 1:24-CV-00118 (ADA) (W.D. Tex. filed Jan. 29, 2024), Dkt. No. 3 (dismissing complaint with prejudice as malicious); <u>Lewis v. Williamson Cnty.</u>, 1:21-CV-00074 (ADA/SH) (W.D. Tex. filed Jan. 25, 2021), Dkt. No. 152 (granting summary judgment in favor of the defendants and dismissing the plaintiff's claims with prejudice).  The undersigned notes that this Court has the authority under 28 U.S.C. § 1651(a) to impose a bar order.  Specifically, "the filing of [multiple] duplicative or frivolous cases could result in the entry of [such] order," which would "bar[ a plaintiff] from filing new actions without prior permission of the Court."  <u>Muhammad v. Dep't of Navy</u>, No. 14-CV-1290 (SLT), 2014 WL 1330902, at *2 (E.D.N.Y. Apr. 1, 2014); <u>see</u> <u>Hong Mai Sa v. Doe</u>, 406 F.3d 155, 158 (2d Cir. 2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system."); <u>see also</u> <u>Rogers v. McMahon</u>, No. 5:22-CV-994 (BKS/TWD), 2022 WL 16755727, at *1 (N.D.N.Y. Oct. 4, 2022) (recommending that the Court impose a bar order, given that the matter was "the sixth action [the p]laintiff ha[d] filed with this Court in recent years"; the plaintiff's prior five actions had been dismissed, two on the ground that they were frivolous; and the plaintiff had been warned that "her unwarranted litigiousness is bordering on vexatiousness" and that continued meritless submissions may result in the issuance of an order "to show cause as to why the Court should not issue an order barring . . . future filings without prior leave of the Court"), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u>, 2022 WL 15261454 (N.D.N.Y. Oct. 27, 2022).

[2] Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action, including but not limited to copying fees, transcript fees, and witness fees.

(iii) seeks monetary relief against a defendant who is immune from such relief."[3]  28 U.S.C. § 1915(e)(2)(B).[4]  "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action."  <u>Praileau v. Fischer</u>, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest."  <u>Kirkland v. Cablevision Sys.</u>, 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest.  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law. . . .

<u>Id.</u> (internal quotation marks, citations, and footnote omitted); <u>see also</u> <u>Sealed Plaintiff v. Sealed Defendant</u>, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obligated to construe his pleadings liberally.") (internal quotation marks and

---

[3] "'A case is malicious if it was filed with the intention or desire to harm another.'"  <u>Tafari v. Hues</u>, 473 F.3d 440, 442 (2d Cir. 2007) (quoting <u>Andrews v. King</u>, 398 F.3d 1113, 1121 (9th Cir. 2005)).  A case "is frivolous when it 'lacks an arguable basis either in law or in fact'" and "advances 'inarguable legal conclusion[s]' or 'fanciful factual allegation[s].'"  <u>Id.</u> (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989)).

[4] These requirements apply equally to non-prisoner pro se litigants.  <u>See</u> N.D.N.Y. L.R. 72.3(d) ("Unless the Court orders otherwise, any civil action that a non-prisoner pro se litigant commences shall be referred to a Magistrate Judge for the purpose of review under 28 U.S.C. §1915(e)(2) and 28 U.S.C. §1915A when an application to proceed in forma pauperis is filed.").

citations omitted).[5]  Thus, the Court is not required to accept unsupported allegations that are devoid of sufficient facts or claims.  Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which these claims are based.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).  Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570; see Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with . . . the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]."  Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)).[6]  Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  "The purpose . . .

---

[5] The undersigned notes, however, that the Second Circuit has "occasionally endorsed some limited forms of this practice, and ha[s] suggested that it may be appropriate 'to charge a pro se litigant with knowledge of, and therefore withdraw special status in relation to, particular requirements [of the legal system] with which he is familiar as a result of his extensive prior experience in the courts.'" Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010) (quoting Sledge v. Kooi, 564 F.3d 105, 109 (2d Cir. 2009), and citing Davidson v. Flynn, 32 F.3d 27, 31 (2d Cir. 1994) (denying a pro se plaintiff an opportunity to replead on the ground that he was "an extremely litigious inmate who [wa]s quite familiar with the legal system and with pleading requirements")); see Shomo v. Furco, No. 18-CV-8523 (VB), 2020 WL 4194941, at *4 (S.D.N.Y. July 20, 2020) (determining that "the deference usually granted to pro se plaintiffs need not be expansively drawn in this case," given that the pro se plaintiff previously filed "at least ten lawsuits and appeals [and] was familiar with court procedure").
[6] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include "(1) a short and plain statement of the grounds for the court's jurisdiction . . . and (3) a demand for the relief sought . . . ." FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." FED. R. CIV. P. 8(d).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42

(2d Cir. 1988) (citations omitted).  However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."  Id. (citations omitted).

**B. Plaintiff's Complaint**

Plaintiff alleges that, "on or around October 12, 2021," "Village of Lake Placid Deputy Pat Kane" ticketed him "for operating without insurance" even though "[p]laintiff believed to be insured by [The General Automobile Insurance Services, Inc.] at the time of the traffic stop[.]"  Compl. at 4, ¶¶17, 19.[7]  Subsequently, "[p]laintiff offered Assistant District Attorney Kenneth Borden, Jr. ('Mr. Borden') to do community service in order to ultimately dismiss the traffic violation."  Id. at 4, ¶20.  "Mr. Borden denied [p]laintiff's offer even though genuine material facts of why [p]laintiff did not have insurance were relevant at the time and remain to this day."  Id.  "Plaintiff entered a plea of 'not guilty' upon arraignment of the traffic violation in the Village of Lake Placid Court and intended to fully utilize his Constitutional rights after Mr. Borden made the choice to not accept [p]laintiff's offer."  Id. at 4, ¶21.

"Plaintiff had a bench trial before former Village Justice David Coursen on November 30, 2022."  Compl. at 4, ¶22.  "Misrepresentations and Constitutional violations were used to secure conviction during the bench trial on November 30, 2022."  Id. at 4, ¶23.  "Upon information and belief, David Coursen resigned from Village Justice amid a State probe into his rulings."  Id. at 4, ¶24.  "Plaintiff's driving privileges were revoked for one year as a result of the unconstitutional trial in the Village of Lake Placid Court."  Id. at 5, ¶25.  "Plaintiff filed a Notice of Appeal regarding the decision on or

---

[7] Citations are to the pagination generated by CM/ECF, located in the header of each page.

around December 30, 2022."  Id. at 5, ¶26.  "This appeal has yet to be heard by the
Essex County Court."  Id.

      "On or around February 4, 2023, [p]laintiff was charged for aggravated
unlicensed operator in the third degree, a misdemeanor in the State of New York
('aggravated unlicensed operator charge')."  Compl. at 5, ¶27.  Plaintiff "was arraigned
on or around February 16, 2023 and wished to proceed pro se, much to the dismay of
th[e] Court and Mr. Borden."  Id. at 5, ¶28.  "In fact, Mr. Borden gave instructions to Mr.
James Hyde IV ('Mr. Hyde'), an attorney of the Essex County Public Defender's Office,
to give to [p]laintiff."  Id. at 5, ¶29.  "Plaintiff was not represented by Mr. Hyde at this
time, and even if he was, it would be improper for a prosecutor to give the other party a
demand to give to the party they represent."  Id. at 5, ¶30.  "In this situation, Mr. Borden
was giving demands to an attorney who did not represent [p]laintiff."  Id.

      "Nonetheless, [p]laintiff was arraigned on or around February 16, 2023 in front of
Alternate Village of Lake Placid Justice, Dean Dietrich."  Compl. at 5, ¶31.  "Plaintiff
wore a kangaroo costume to the arraignment on this day."  Id.  "Before arraignment,
Alternative Justice Dean Dietrich gave [p]laintiff the opportunity to change outfits as he
stated 'I cannot take you seriously.'"  Id. at 5, ¶32.  "Plaintiff changed from the kangaroo
costume and entered a plea of 'not guilty' without any further incident."  Id. at 5, ¶33.
"The only incident was Mr. Borden, a prosecutor representing the Essex County District
Attorney's Office, giving demands to Mr. Hyde, who did not represent [p]laintiff."  Id. at
5-6, ¶34.  "Plaintiff was able to proceed pro se."  Id.

"On or around March 18, 2022, [sic] [p]laintiff was arrested and spent the weekend in jail regarding the kangaroo costume."[8]  Compl. at 6, ¶35.  "Plaintiff was arraigned for criminal contempt in the second degree ('criminal contempt charge')."  Id. "Plaintiff was represented by Mr. Hyde in the criminal contempt charge in Essex County Court."  Id. at 6, ¶36.  "In efforts to retaliate against [p]laintiff, unjust Orders of Protection were issued against [p]laintiff regarding Town of North Elba Court Clerk Jennifer Hayes ('Ms. Hayes') and Village of Lake Placid Court Clerk Victoria Duffy ('Ms. Duffy') during arraignment."  Id. at 6, ¶37.  "Mr. Hyde did nothing to protect [p]laintiff's interests and the truth."  Id.  "The criminal contempt charges stemming from wearing a kangaroo costume to the Village of Lake Placid arraignment were ultimately dismissed by County Court Judge Richard Mayer."  Id. at 6, ¶38.  "The State of New York has filed a Notice of Appeal regarding this decision."  Id.

"While Mr. Hyde represented [p]laintiff for the criminal contempt charge, [p]laintiff was still proceeding pro se in the Village of Lake Placid Court for the aggravated unlicensed operator charge until on or around May 2023."  Compl. at 6, ¶39.  "After a pressure campaign from the court, [p]laintiff obliged to being represented by Mr. Hyde, with a promise that Mr. Hyde would file a motion on [p]laintiff's behalf."  Id. at 6, ¶40. "Without this promise, [p]laintiff would not have made the choice to be represented by Mr. Hyde and the Essex County Public Defender's Office."  Id.

---

[8] Although plaintiff states in his complaint that he was arrested "[o]n or around March 18, 2022," "regarding the kangaroo costume," this appears to be a typographical error.  Compl. at 6, ¶35.  Given that plaintiff presents the facts in his complaint in chronological order, it is likely that plaintiff intended to say "[o]n or around March 18, 2023."  See generally id.; see also Lewis v. Essex Cnty., 8:23-CV-01636 (TJM/CFH) (N.D.N.Y. filed Dec. 26, 2023), Dkt. No. 9 at 9 ("On or around March 18, 2023, [p]laintiff was arrested for criminal contempt in the second degree, resulting from wearing the kangaroo costume to the arraignment in the Village of Lake Placid Court in February 2023.").

On November 16, 2023, during a pre-trial hearing, "Mr. Hyde had withdrawn as counsel, without providing the court with proper documentation[.]"  Compl. at 6, ¶41. "Mr. Hyde did not file the motion as promised prior to his unlawful withdrawal at the November 16, 2023 pre-trial conference."  Id. at 7, ¶42.  "Additionally[, after Hyde's withdrawal,] new counsel was assigned as stand-by counsel in Miriam Hadden ('Ms. Hadden'), representing the Essex County Conflict Defender's Office."  Id. at 6-7, ¶41. "Ms. Hadden immediately displayed an ineptitude surrounding the facts of the case."  Id. at 7, ¶43.  "She attempted to 'educate' [p]laintiff on the speedy trial laws of New York State, ignoring that [p]laintiff had already brought up speedy trial statutes on the record in the case she was now assigned to assist [p]laintiff with."  Id.  "Plaintiff found that an attorney being assigned was sharing statutes with [p]laintiff that he already included in previous motions on the record, while displaying an ineptitude of the facts at hand, as annoying and a cause of emotional disturbance."  Id. at 7, ¶44.  "For example on November 18, 2022, [p]laintiff was sent one hundred and eighteen emails (118) by Mirriam Hadden without any explanation of the emails relevancy to the case."  Id. at 7, ¶45.  "The purpose was either to overwhelm and annoy [p]laintiff or otherwise could be construed as a sinister attempt to take credit for [p]laintiff's work while she was, in fact, unwanted stand by counsel."  Id.  "Plaintiff wished to proceed pro se but was now receiving one hundred and eighteen (118) irrelevant emails from someone who could not display the simplest form of understanding what has already happened in the case."  Id. at 7, ¶46.  "Ms. Hadden was relieved of her stand-by counsel status before trial."  Id. at 7, ¶47.

"With Mr. Hyde's improper departure from the case, [p]laintiff had been left with a race against the clock to prepare for a December 11, 2023 trial."  Compl. at 7, ¶48.  "Plaintiff requested an adjournment of trial on November 30, 2023 which was denied by Honorable Alternate Village Justice Dean Dietrich."  Id. at 7-8, ¶48.  "Additionally, [p]laintiff remained without the court records from the court."  Id. at 8, ¶49.  "Mr. Hyde's case file did not provide information on why previous hearings were adjourned and which party was responsible for such adjournment."  Id.  "Without a court record request being completed and Mr. Hyde's case file being incomplete, [p]laintiff was unable to accurately compute the time in regards to a speedy trial violation by prosecution prior to trial."  Id.  "Since court and case record requests have remained incomplete, [p]laintiff was unduly prejudiced."  Id.

"On December 4, 2023, [p]laintiff emailed Essex County Commissioner of Jurors Andrew Quinn ('Mr. Quinn') regarding 'a list of the panel of prospective jurors' in order to submit a potential challenge pursuant to CPL 270.10 before jury is selected."  Compl. at 8, ¶50.  "On this day, Mr. Quinn responded that '[t]he jury list is not available before the day of the trial' and that '[t]he judge does not get to see it before the day of the trial.'" Id.; see id. at 22 ("Exhibit A").  "This is utterly erroneous and was an attempt to hinder [p]laintiff's Sixth Amendment rights."  Id. at 8, ¶50.

"Later, on December 4, 2023 [p]laintiff received electronic communication from Village of Lake Placid Court Clerk Victoria Duffy regarding superseding indictments [ ] signed by Assistant Chief Francis Strack of the Lake Placid Police Department."  Compl. at 8, ¶51; see id. at 24-27 ("Exhibit B").  "This superseding indictment dismissed the misdemeanor aggravated unlicensed operator to a traffic violation."  Id. at 8, ¶51.  "The

result was that [p]laintiff, by current New York State law, no longer had the right to a jury trial since the superseding indictments were traffic violations and not a misdemeanor charge." Id. at 8, ¶52. "A new arraignment for the superseding indictment was required by New York State law." Id. "Plaintiff's requests to Village of Lake Placid Court Clerk Victoria Duffy regarding the nature of the trial went unanswered[.]" Id. at 8, ¶53; see id. at 29-30 ("Exhibit C").

"On December 11, 2023 [p]laintiff was arraigned for the superseding indictment in which there was a plea of 'not guilty.'" Compl. at 9, ¶54. "Honorable Alternate Justice Dean Dietrich ('[Justice] Dietrich') wished to proceed with a Bench Trial on the same exact day [plaintiff] was arraigned for the superseding indictment." Id. at 9, ¶55. Plaintiff "warned [Justice] Dietrich of the high probability of a mistrial and made an oral Motion to Adjourn the trial." Id. Justice "Dietrich denied [plaintiff]'s oral Motion to Adjourn at the beginning of trial on December 11, 2023." Id. at 9, ¶56. Justice "Dietrich did not wish to have a fair and lawful trial, pursuant to the Oath that he subscribed." Id. "This Oath requires [Justice] Dietrich to follow the Constitution of the United States of America, in addition to New York State." Id. "A Motion for New Trial has been filed in the Village of Lake Placid Court and is awaiting a decision from Alternative Village Justice Dean Dietrich." Id.

"Section 255-b of the New York State Judiciary law states: '[a] docket-book, kept by a clerk of a court, must be kept open, during the business hours fixed by law, for search and examination by any person.'" Compl. at 9, ¶57. "Plaintiff made a request to inspect the docket-book of the clerk of the Town of North Elba court, Ms. Jennifer Hayes, specifically seeking to view October 10, 2023." Id. at 9, ¶58. Hayes "did not

make the docket-book available, and [ ] Justice . . . Dietrich[ ] prohibited the book to be kept open, as required by law."  Id.  "The docket-book was not made available for inspection upon request."  Id. at 9, ¶59.  "The request was discussed during a November 16, 2023 pre-trial conference for a matter in the Village of Lake Placid Court, a completely separate court from the Town of North Elba."  Id.  "The Town of North Elba Justice, Dean Dietrich, is also an Alternate Justice for the Village of Lake Placid, Inc."  Id.  "Plaintiff was being gaslit by the Village of Lake Placid Court and the Town of North Elba Court."[9]  Id. at 10, ¶60.

"On December 20, 2023, [p]laintiff traveled to Elizabethtown, NY to inspect the docket books of the Essex County County Court."  Compl. at 10, ¶61.  "On this day, [p]laintiff was again gaslit about the law."  Id.  "Upon requesting examination of Ms. Gonzalez's docket-book, another unnamed employee of Ms. Gonzalez' office gaslit [p]laintiff and advised that Chelsea Merrihew, the County Clerk, had the Court records being requested, which was inaccurate."[10]  Id.  "This is contrary to law[.]"  Id. at 10, ¶62.

Moreover, "Ms. Merrihew has had a history of acting contrary to law."  Compl. at 10, ¶62.  Specifically, "[p]laintiff [previously] filed a Notice of Appeal within the Village of Lake Placid Court on or around July 2023, a court within Essex County, NY."  Id.  "Ms. Merrihew had sent a notice to [p]laintiff stating that the notice of appeal was rejected because it was not an original."  Id.  Through this notice, Merrihew "made the choice to give [p]laintiff incorrect information and mail an unsigned document."  Id. at 17, ¶109;

---

[9] Plaintiff provides the following definition in support of his claims: "[g]aslighting can be defined as 'the process of making somebody believe untrue things in order to control them, especially that they have imagined or been wrong about what has really happened' or to 'manipulate (someone) using psychological methods into questioning their own sanity or powers of reasoning.'"  Compl. at 10, ¶60.
[10] Plaintiff does not provide any further details regarding "Ms. Gonzalez."

see id. at 32 ("Exhibit D").  "Plaintiff followed up with the following email on or around

August 10, 2023":

> Hey Chelsea, I believe a copy of my submission should have
> been accepted by the court.  Section 200.33 of the Uniform
> Rules for NY State Trial Courts says: (a) When a notice of
> appeal is filed with a local court, a copy shall be filed with the
> county clerk by the person filing with the local court.  I had
> filed a copy with the county clerk and it was rejected for not
> being an original, which is where my confusion stems from.
> Can you please let me know what I am missing?  Thank you
> in advance.  Sincerely, Scott Phillip Lewis.

Id. at 10, ¶63.  "Ms. Merrihew responded on the same day stating in full":

> Good afternoon!  I have reviewed 22 NYCRR 200.33 and
> agree that copies of a notice of appeal should have been
> accepted for filing.  You may resubmit your papers.  Please
> include the rejection cover page returned with your original
> submission.  If you wish, you may address your mailing
> directly to me.  I apologize for the confusion and
> inconvenience.  Sincerely, Chelsea M. Merrihew[.]

Id. at 11, ¶64; see id. at 34-36 ("Exhibit E").  On August 23, 2023, plaintiff requested that

Merrihew "mail [him] official correspondence with an actual signature asking for this."

Id. at 35.  Merrihew did not respond, and on October 11, 2023, plaintiff asked for a

status update.  See id.  Later, on October 11, 2023, Merrihew responded and explained

that nothing has been filed and the appeal was never commenced, as the Court never

received the resubmitted paperwork.  See id. at 35-36.  On November 2, 2023, plaintiff

responded:

> Hi Chelsea, Since you erroneously rejected the papers, I do
> not feel the need to resubmit.  Appeals have a very specific
> timeframe that need to be followed.  Since you erroneously
> rejected the papers, I asked for a signed document from the
> court requesting the papers to be resubmitted.  Why do I
> need to resubmit?  Can you just file the papers I have filed
> correctly and timely the first time?  I will need a letter with a
> signature explaining if documents need to be resubmitted

13

again for an appeal to commence.  This has taken a very
long time.  Sincerely, Scott Phillip Lewis.

Id. at 36.  "No action has been taken on [p]laintiff's appeal."  Id. at 10, ¶65.  "No

corrections have been made by Chelsea Merrihew."  Id.

## C. Analysis

Liberally construing plaintiff's complaint, he brings claims under 42 U.S.C. § 1983

against (1) Justice Dean Dietrich; (2) Victoria Duffy; (3) Jennifer Hayes; (4) Chelsea

Merrihew; (5) Commissioner Andrew Quinn; (6) Assistant District Attorney Kenneth

Borden, Jr.; (7) District Attorney Kristy Sprague; (8) James Hyde, IV; (9) Mirriam

Hadden; (10) the Essex County Public Defender's Office; (11) the Essex County

Conflict Defender's Office; (12) the Town of North Elba; (13) the Village of Lake Placid;

and (14) Essex County, alleging violations of his Sixth and Fourteenth Amendment

rights.[11]  See generally Compl.; see also Triestman v. Fed. Bureau of Prisons, 470 F.3d

471, 475 (2d Cir. 2006) ("This policy of liberally construing pro se submissions is driven

by the understanding that '[i]mplicit in the right of self-representation is an obligation on

the part of the court to make reasonable allowances to protect pro se litigants from

inadvertent forfeiture of important rights because of their lack of legal training.'")

(quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).  Plaintiff also seeks to bring

state law tort claims against Justice Dietrich, Hayes, Merrihew, the Town of North Elba,

---

[11] Although plaintiff refers to Village of Lake Placid Deputy Pat Kane, Village Justice David Coursen, Assistant Chief Francis Strack of the Lake Placid Police Department, and Ms. Gonzalez within the "factual allegations" section of his complaint, see Compl. at 4, 8, 10, he does not appear to pursue any claims against these individuals in this action, as he does not raise any arguments against them within the "claims" section of his complaint.  See id. at 11-19.  Plaintiff also does not name these individuals as defendants in the "parties" section of his complaint.  See id. at 1-3.  The undersigned further notes that plaintiff has purported to bring a claim against Kane and Coursen in another, separate action.  See Lewis v. Essex Cnty., 8:23-CV-01636 (TJM/CFH) (N.D.N.Y. filed Dec. 26, 2023).

and Essex County for the negligent infliction of emotional distress.  See Compl. at 17-19.

### 1. Immunities

### a. Judicial Immunity

Plaintiff names Justice Dietrich as a defendant in this action.  See generally Compl.  He alleges that Justice Dietrich violated his Sixth and Fourteenth Amendment rights.  See id. at 5-15.  However, the Eleventh Amendment to the United States Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. AMEND. XI.  Thus, "'[a]s a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress.'"  Kisembo v. N.Y.S. Office of Children & Family Servs., 285 F. Supp. 3d 509, 519 (N.D.N.Y. 2018) (quoting Jackson v. Battaglia, 63 F. Supp. 3d 214, 219-20 (N.D.N.Y. 2014)).  "This jurisdictional bar applies regardless of the nature of the relief sought."  Murawski v. N.Y. State Bd. of Elections, 285 F. Supp. 3d 691, 695 (S.D.N.Y. 2018) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)).  "This immunity 'extends beyond state agencies to state officials at those agencies working on behalf of the state (i.e., in their official capacities).'"  Kisembo, 285 F. Supp. 3d at 519 (quoting Emmons v. City Univ. of N.Y., 715 F. Supp. 2d 394, 406 (E.D.N.Y. 2010)).

"With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.'" Id. (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." Id. (citation omitted); see Positano v. New York, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA). "Judicial immunity is immunity from suit, not just immunity from the assessment of damages." Zavalidroga, 2017 WL 8777370, at *8 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.'" Id. (quoting Mireles, 502 U.S. at 11-12).

"In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.'" Pacherille v. Burns, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting Ceparano v. Southampton Just. Ct., 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)). "Whether a judge acted in a judicial capacity depends on the nature of the act

[complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Ceparano, 404 F. App'x at 539 (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he "'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.'" Ceparano, 404 F. App'x at 539 (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.'" Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (quoting Mireles, 502 U.S. at 11).

Plaintiff contends that Justice Dietrich violated his Sixth and Fourteenth Amendment rights. See Compl. at 5-15. Specifically, plaintiff asserts that Justice Dietrich "allowed [Mr. Hyde's] unlawful withdrawal" of representation; "assign[ed Mirriam Hadden,] an unlawful representative" to his case; denied plaintiff "a fair and lawful trial" by denying plaintiff's oral motion to adjourn on December 11, 2023; "prohibited the [docket-]book to be kept open, as required by law"; and "exacerbated emotional distress in [p]laintiff over being denied the right to review the docket-book when he made incorrect comments that [p]laintiff perceived to be gaslighting during a pre-trial hearing on or around November 16, 2023."[12] Compl. at 9, 15, 18. Liberally construing his

---

[12] The undersigned notes that "gaslighting" does not appear to be a constitutional violation. See, e.g., Boyd v. City of Spartanburg, No. 7:24-CV-00711 (BHH/KFM), 2024 WL 2848896, at *6 (D.S.C. Apr. 12, 2024) (dismissing the plaintiff's complaint as frivolous, nonsensical, and lacking a basis in the law, where the plaintiff alleged, inter alia, that the defendants "have been gaslighting her"), report and recommendation adopted, 2024 WL 2763919 (D.S.C. May 29, 2024).

complaint, plaintiff appears to argue that Justice Dietrich "acted . . . outside the bounds of [his] judicial authority" during plaintiff's proceedings.  Dougal v. Lewicki, No. 1:23-CV-1167 (DNH/CFH), 2023 WL 6430586, at *5 (N.D.N.Y. Oct. 3, 2023), report and recommendation adopted, 2023 WL 7013384 (N.D.N.Y. Oct. 25, 2023).

However, "[t]he scope of the judge's jurisdiction must be construed broadly, such that a court acts in the absence of all jurisdiction only when it does not have any statutory or constitutional power to adjudicate the case."  Dickerson v. Siegal, No. 23-CV-3859 (EK/LB), 2023 WL 6158833, at *3 (E.D.N.Y. Sept. 21, 2023) (citations and internal quotation marks omitted).  Even accepting plaintiff's allegations as true, he has not adequately alleged that Justice Dietrich acted in the "complete absence of all jurisdiction."  Pacherille, 30 F. Supp. 3d at 163.  Rather, even if Justice Dietrich erred by allowing Mr. Hyde's withdrawal, assigning Ms. Hadden to plaintiff's case, denying plaintiff's motion to adjourn, and declining to keep the docket-book open, these were "merely . . .  procedural error[s], which [are] protected by judicial immunity." Cunningham v. Dep't of Child. Serv., 842 F. App'x 959, 965 (6th Cir. 2021) (citing Stern v. Mascio, 262 F.3d 600, 607 (6th Cir. 2001) ("Even grave procedural errors or acts taken when no statute purports to confer on the court the authority purportedly exercised will not deprive a judge of judicial immunity.")); see Stump, 435 U.S. at 359 ("A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors"); see also Olszyk v. Thorne, No. 3:20-CV-0445 (TJM/ML), 2020 WL 5634328, at *5 (N.D.N.Y. June 17, 2020) ("The Complaint is devoid of facts plausibly suggesting that Defendant [Judge] Barrasse acted in the clear absence of all jurisdiction.  As a result, I recommend that the

claims against Defendant Barrasse be dismissed in their entirety based on the doctrine of absolute judicial immunity."), report and recommendation adopted, 2020 WL 5633791 (N.D.N.Y. Sept. 21, 2020).

Moreover,

> [b]ecause scrutiny of a judge's state of a mind would hinder the adjudicatory process in the very manner that the judicial immunity doctrine is designed to prevent, a judge will be denied immunity only where it appears, first, that the judge acted in the clear absence of jurisdiction, and second, that the judge must have known that he or she was acting in the clear absence of jurisdiction.

Maestri v. Jutkofsky, 860 F.2d 50, 53 (2d Cir. 1988).  Plaintiff has not alleged that Justice Dietrich knew, or should have known, he was acting in the clear absence of jurisdiction.  See Tucker v. Outwater, 118 F.3d 930, 934 (2d Cir. 1997).  Indeed, under New York Law, it is within the trial court's sound discretion "to grant or deny permission for counsel to withdraw," Applebaum v. Einstein, 81 N.Y.S.3d 525, 526 (App. Div. 2018) (internal quotation marks and citations omitted), "to substitute [new] counsel," People v. Watson, 46 N.E.3d 1057, 1060 (2016), to "grant[ or deny] an adjournment for any purpose," Matter of Anthony M., 471 N.E.2d 447, 454 (1984), and to disclose court records, see In re E. 51st St. Crane Collapse Litig., 920 N.Y.S.2d 584, 590 (Sup. Ct. 2011).  Thus, it cannot be said that Justice Dietrich acted in the clear absence of jurisdiction, or should have known that he was acting in the clear absence of jurisdiction, when he allowed Mr. Hyde's withdrawal, substituted Ms. Hadden as new counsel, denied plaintiff's adjournment request, and declined to keep the docket-book open. Therefore, Justice Dietrich is entitled to absolute immunity.

To the extent plaintiff seeks to bring an action against Justice Dietrich in his official capacity, the suit is barred by the Eleventh Amendment.  See Pacherille, 30 F. Supp. 3d at 163 n.5 ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities."); see also Trello v. McKeighan, 624 F. Supp. 3d 150, 155-56 (N.D.N.Y. 2022).  Accordingly, the undersigned recommends dismissing the claims against Justice Dietrich in his individual and official capacities as barred by both judicial immunity and Eleventh Amendment immunity.

### b. Quasi-Judicial Immunity

### i. Claims against Duffy, Hayes, and Merrihew

Plaintiff also raises claims against Victoria Duffy, the Village of Lake Placid Court Clerk; Jennifer Hayes, the Town of North Elba Court Clerk; and Chelsea Merrihew, the Essex County Clerk, contending that they violated his Sixth and Fourteenth Amendment rights.  See Compl. at 6, 8-14, 16-17.  "Judicial immunity has been extended to court clerks and 'others who perform functions closely associated with the judicial process' when they are performing discretionary acts of a judicial nature which are essential to the judicial process, especially the filing of court documents and managing a court's calendar."  Calley v. Town of Cortlandt, No. 19-CV-5453 (CM), 2019 WL 11880434, at *5 (S.D.N.Y. July 8, 2019) (quoting Cleavinger v. Saxner, 474 U.S. 193, 200 (1985), and citing Rodriguez v. Weprin, 116 F.3d 62, 66 (2d Cir. 1997) (extending judicial immunity to state court clerks who were ordered by Appellate Division judges not to provide a litigant with documents and not to expand the record on appeal), and Pikulin v. Gonzales, No. 07-CV-0412 (CBA), 2007 WL 1063353, at *2 (E.D.N.Y. Apr. 5, 2007) (extending judicial immunity to the federal court clerk with respect to claims arising out

of the filing and docketing of legal documents)).  In other words, "[c]ertain actors associated with the courts enjoy absolute, quasi-judicial immunity from suit because such immunity is 'necessary to protect the judicial process.'"  Gross v. Rell, 695 F.3d 211, 215 (2d Cir. 2012) (quoting Burns v. Reed, 500 U.S. 478, 485 (1991)).  Courts have held that "Clerk's Office activities of filing and docketing legal documents" are an "integral part of the judicial process" and are, thus, entitled to absolute immunity. McKnight v. Middleton, 699 F. Supp. 2d 507, 526 (E.D.N.Y. 2010), aff'd, 434 F. App'x 32 (2d Cir. 2011) (summary order); see Humphrey v. Court Clerk for the Second Circuit, No. 08-CV-0363 (DNH/DEP), 2008 WL 1945308, at *2 (N.D.N.Y. May 1, 2008) (explaining that court clerks enjoy absolute immunity "if the task was undertaken pursuant to the explicit direction of a judicial officer or pursuant to the established practice of the court") (citing Rodriguez, 116 F.3d at 67); see also Argentieri v. Clerk of Ct. for Judge Kmiotek, 420 F. Supp. 2d 162, 165 (W.D.N.Y. 2006) ("Inasmuch as [the] plaintiff claims that [the] defendants violated his rights by refusing to acknowledge his motions or to schedule his court proceedings, [the] defendants were assisting judges in performing essential judicial functions. As a result, [the] plaintiff's claims are barred by absolute immunity.").

Here, plaintiff claims that Duffy, as the Village of Lake Placid Court Clerk, failed to answer his requests "regarding the nature of [his] trial" and failed to "provide [p]laintiff's court records upon request."  Compl. at 8, 14.  Plaintiff also asserts that Hayes, as the Town of North Elba Court Clerk, "did not allow [p]laintiff to review docket-books prior to [his] trial."  Id. at 13, 18.  Plaintiff further alleges that Merrihew, as the Essex County Clerk, "has . . . a history of acting contrary to law"; specifically, she

"g[a]ve [p]laintiff incorrect information and mail[ed plaintiff] an unsigned document" and "has yet to correct her mistake or offer any clarification[.]" Id. at 10, 16-17.  However, "[a]ll of [plaintiff's] allegations are based on discretionary acts performed by [Duffy, Hayes, and Merrihew] in their official capacit[ies] as Court Clerks."  Albritton v. Sullivan, No. 1:22-CV-00900 (MAD/DJS), 2023 WL 3612840, at *1 (N.D.N.Y. May 24, 2023). Plaintiff does not allege that Duffy's, Hayes', and Merrihew's actions were taken outside of the scope of the functions associated with their positions as court clerks.  See Muia v. Mancino, No. 1:21-CV-1323 (GTS/DJS), 2023 WL 2631936, at *6 (N.D.N.Y. Mar. 24, 2023) ("Defendant Mancino is entitled to immunity from suit to the extent the Complaint seeks damages against him in connection with his official duties as Albany City Court Clerk"); see also Carthen v. Gonzalez, No. 19-CV-6392 (BMC/LB), 2020 WL 376569, at *2 (E.D.N.Y. Jan. 23, 2020) ("James Smoot, as the Borough Court Clerk, is entitled to absolute immunity from damages for performance of tasks which are judicial in nature and an integral part of the judicial process.").

Indeed, the very essence of plaintiff's claims triggers quasi-judicial immunity because he is complaining of Duffy's, Hayes', and Merrihew's actions that were performed in their capacities as the Village of Lake Placid Court Clerk, the Town of North Elba Court Clerk, and the Essex County Court Clerk.  See Kellier v. Ross, No. 22-CV-2506 (LTS), 2022 WL 1292290, at *4 (S.D.N.Y. Apr. 29, 2022) (dismissing the plaintiff's claims against the court clerk-defendant under the doctrine of absolute judicial immunity where the plaintiff alleged "that [the clerk] told him the clerk's office could not accept his motion to disqualify the judge presiding over his criminal proceedings, and that he instead must file the motion in open court" and thus "demonstrate[d] that [the

clerk] was acting pursuant to the established practice of the court, and that her acts were therefore judicial in nature and an integral part of the judicial process"); see also Bloom v. New York State Unified Ct. Sys., No. 19-CV-7115 (DRH), 2020 WL 6118828, at *5 (E.D.N.Y. Oct. 16, 2020) (holding that the court clerk's actions in allegedly failing to calendar a hearing on the plaintiff's reinstatement, losing the plaintiff's reinstatement motion, issuing an order holding the motion in abeyance, and ignoring the plaintiff's letter requests fell within the scope of her judicial duties and were protected by absolute quasi-judicial immunity); Bey v. New York, No. 11-CV-3296 (JS/WDW), 2012 WL 4370272, at *7 (E.D.N.Y. Sept. 21, 2012) (citing cases and holding that court clerks were entitled to absolute immunity in suit alleging they refused to file documents).

Moreover, to the extent plaintiff claims that Hayes and Duffy requested an "unjust Order[ ] of Protection" in efforts to retaliate against him, he does not provide any further factual allegations sufficient to state a claim. Compl. at 6. Further, any such claim appears duplicative as plaintiff advanced a similar argument before the Court in another, separate action, which the undersigned recommended to be dismissed. See Lewis v. Essex Cnty., 8:23-CV-01636 (TJM/CFH) (N.D.N.Y. filed Dec. 26, 2023), Dkt. No. 9 at 30 (construing the plaintiff's claim that Duffy requested an order of protection out of retaliation as a First Amendment claim, and recommending dismissal of such claim because plaintiff failed to state "the requisite causal connection between the protected [speech] and adverse action."). If the undersigned were to consider such a claim in this matter, which it declines to do so, such claim could be dismissed as duplicative and malicious. See, e.g., Bailey v. Johnson, 846 F.2d 1019, 1021 (5th Cir. 1988) ("[R]epetitious litigation of virtually identical causes of action is subject to

dismissal under 28 U.S.C. § 1915(d) as malicious.") (quoting Robinson v. Woodfork, 834 F.2d 1023 (5th Cir. 1987)); Buckenberger v. Reed, Civ. No. 10-856, 2010 WL 1552672, at *1 (E.D. La. Mar. 16, 2010) (recommending dismissal of complaint asserting claims which were duplicative of those in a pending action as "malicious"), report and recommendation adopted, 2010 WL 1552673 (E.D. La. Apr. 14, 2010), adhered to on reconsideration, 2010 WL 1903880 (E.D. La. May 6, 2010); Williams v. Bunn, No. 06-CV-0466, 2007 WL 1703816, at *2 (W.D.N.Y. Jun. 7, 2007) (dismissing claim with prejudice because it was repetitive of a claim twice brought previously and dismissed); Hahn v. Tarnow, No. 06-CV-12814, 2006 WL 2160934, at *1 (E.D. Mich. July 31, 2006) (dismissing complaint as "repetitive, malicious and frivolous, and duplicative"); Blake v. Bentsen, No. 95-CV-2227 (SJ), 1995 WL 428694, at *2 (E.D.N.Y. Jul. 11, 1995) (directing dismissal of repetitious litigation as abusive and malicious).

It is, therefore, recommended that plaintiff's claims against Duffy, Hayes, and Merrihew be dismissed under the doctrine of quasi-judicial immunity.

### ii. Claims against Quinn

Plaintiff also purports to bring a claim against Andrew Quinn, the Essex County Commissioner of Jurors, alleging a violation of his Sixth Amendment rights. See Compl. at 8, 13. Similar to extending judicial immunity to court clerks, judicial immunity has also been extended to "some officials who are not judges but who perform functions closely associated with the judicial process." Dorman v. Higgins, 821 F.2d 133, 137 (2d Cir. 1987) (citation and internal quotation marks omitted); see Holland v. Morgenstern, 12-CV-4870 (ARR/VVP), 2013 WL 2237550, at *4 (E.D.N.Y. May 20, 2013) ("Absolute immunity may attach to a non-judicial officer where that individual serves as an 'arm of

the court,' or acts as an 'integral part[ ] of the judicial process.'") (quoting Scotto v. Almenas, 143 F.3d 105, 111 (2d Cir. 1998), and Briscoe v. LaHue, 460 U.S. 325, 335 (1983)); see also T.A. v. Leff, No. 17-CV-4291 (JFB/SIL), 2018 WL 5077163, at *9 (E.D.N.Y. July 19, 2018), report and recommendation adopted sub nom. Lally v. Leff, 2018 WL 4445152 (E.D.N.Y. Sept. 18, 2018).  As relevant here, in New York, "[t]he Commissioner of Jurors is considered an officer of the court and performs services according to rules prescribed by the Appellate Division, which services are an integral part of the operation of the courts."  Newsday, Inc. v. Sise, 507 N.Y.S.2d 182, 186 (App. Div. 1986), aff'd, 518 N.E.2d 930 (1987); see, e.g., N.Y. Jud. Law § 502(d) ("The commissioner shall take any steps necessary to enforce the laws and rules relating to the drawing, selection, summoning and impanelling of jurors.").  Thus, some courts have held that a "jury commissioner" occupation was analogous to a "court clerk" occupation, and, therefore, jury commissioners "have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process . . . unless [the] acts were done in the clear absence of all jurisdiction."  Carrea v. California, No. 1:10-CV-01004 (OWW), 2010 WL 4687973, at *7 (E.D. Cal. Nov. 10, 2010) (citation omitted); see also Pomerantz v. Los Angeles Cnty., 674 F.2d 1288, 1291 (9th Cir. 1982) (holding that the Los Angeles County Superior Court's jury administration personnel were entitled to quasi-judicial immunity for actions they performed in determining the eligibility of potential jurors to serve).

Plaintiff claims that "[o]n December 4, 2023, [he] emailed Essex County Commissioner of Jurors Andrew Quinn ('Mr. Quinn') regarding 'a list of the panel of prospective jurors' in order to submit a potential challenge pursuant to CPL 270.10

before jury is selected."  Compl. at 8, ¶50.  Plaintiff asserts that "Mr. Quinn responded that 'The jury list is not available before the day of the trial' and that '[t]he judge does not get to see it before the day of the trial.'"  Id.  Plaintiff contends that "Quinn was acting under the color of State law when he did not make the list of jurors available until the day of trial" and "[e]ven on the day of trial, the list of jurors were not received"; thus, "Quinn's unlawful policy injured [him.]"  Id. at 13, ¶74.

However, plaintiff does not allege that Quinn's actions were taken outside of the scope of the functions associated with his position as Commissioner of Jurors.  See Zambas v. Egitto, No. 21-CV-10157 (LTS), 2022 WL 37088, at *2 (S.D.N.Y. Jan. 3, 2022) ("Plaintiff brings claims against Myers for her role as a court employee assigned to his Family Court matter[; thus,] any tasks she performed in that capacity are an integral part of the judicial process.  Those claims, therefore, must be dismissed under the doctrine of judicial immunity and as frivolous."); see also Monte v. Vance, No. 18-CV-9595 (LLS), 2018 WL 11302546, at *5 (S.D.N.Y. Nov. 7, 2018) (granting immunity to the court administrator-defendant because his "actions were undertaken in the context of a particular case, and it therefore appears that he is immune from suit on this claim").  Moreover, plaintiff does not claim that Quinn acted "in the clear absence of all jurisdiction."  Carrea, 2010 WL 4687973, at *7.  Indeed, by declining to provide plaintiff with the list of prospective jurors because "[t]he jury list is not available before the day of trial," Quinn appears to have acted pursuant to the authority granted to him under New York's judiciary laws.[13]  Compl. at 22; see N.Y. JUD. LAW § 502; see also Newsome v.

---

[13] Contrary to plaintiff's assertions, plaintiff was not entitled to receive a list of potential jurors prior to the day of trial.  See, e.g., People v. Alvarez-Hernandez, No. 1352/00, 2002 WL 31065466, at *9 (N.Y. Co. Ct. Sept. 5, 2002) ("Juror qualification questionnaires and juror records are confidential and are not to be disclosed except to the county jury board or as permitted by the Appellate Divisions.  The material sought

Daley, No. 84 C 4996, 1987 WL 9311, at *1 (N.D. Ill. Apr. 7, 1987) ("[J]ury

commissioners are appointed by the circuit court and are subject to its rules.  They

follow statutory procedures for compiling lists of prospective jurors.  Their acts are in aid

of the court and are an integral part of the judicial process.  Plaintiffs allege not that the

jury commissioners violated Illinois law but that they should supplement the voter

registration list with other sources.  Clearly, their failure to do so does not constitute

acting outside the scope of their official duties.  Therefore, the court concludes that

defendant jury commissioners are entitled to quasi-judicial absolute immunity.").  It is,

therefore, recommended that plaintiff's claims against Quinn be dismissed under the

doctrine of quasi-judicial immunity.

### c. Prosecutorial Immunity

Plaintiff also raises Sixth Amendment claims against Assistant District Attorney

Kenneth Borden, Jr., as well as District Attorney Kristy Sprague.  See Compl. at 4-5, 12.

However, "[p]rosecutors are immune from civil suit for damages in their individual

capacities for acts committed within the scope of their official duties where the

challenged activities are not investigative in nature but, rather, are intimately associated

with the judicial phase of the criminal process."  Linder v. Oneida Cnty. Dist. Att'y Off.,

No. 6:23-CV-01061 (GTS/TWD), 2023 WL 6810098, at *3 (N.D.N.Y. Oct. 16, 2023)

(citing Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013), and Imbler v.

Pachtman, 424 U.S. 409, 430 (1976)), report and recommendation adopted, 2023 WL

---

by defendant[, including a list of the names of potential jurors,] should not be disclosed as it would compromise the personal privacy of prospective jurors and could result in the harassment of prospective jurors and have a chilling effect on the jury selection process in future cases.  Generalized assertions . . . that defendant needs this information for trial preparation do not constitute the necessary factual predicate which would make it likely that the records would provide relevant evidence."); United States v. Gotti, No. S8:02-CR-743 (RCC), 2004 WL 2274712, at *6 (S.D.N.Y. Oct. 7, 2004) (explaining that the defendant "is not entitled to unencumbered access to juror information").

8780112 (N.D.N.Y. Dec. 19, 2023); see Imbler, 424 U.S. at 431 ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983.").  In addition, prosecutors are immune from suit for acts that may be administrative obligations but are "directly connected with the conduct of a trial."  Van de Kamp v. Goldstein, 555 U.S. 335, 344 (2009).

In short, absolute prosecutorial immunity covers "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State."  Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).  This includes "the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial."  Moye v. City of New York, No. 11-CV-316 (PGG), 2012 WL 2569085, at *5 (S.D.N.Y. July 3, 2012) (internal quotation marks and citations omitted).  "Immunity even extends to the falsification of evidence and the coercion of witnesses, the knowing use of perjured testimony, the deliberate withholding of exculpatory information, the making [of] false or defamatory statements in judicial proceedings, and conspiring to present false evidence at a criminal trial[.]"  Buari v. City of New York, 530 F. Supp. 3d 356, 378-79 (S.D.N.Y. 2021) (citing Taylor v. Kavanagh, 640 F.2d 450, 452 (2d Cir. 1981), Imbler, 424 U.S. at 431 n.34, Burns, 500 U.S. at 490, and Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994)) (internal quotation marks omitted).

Moreover, "'[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county.'"  Ying Jing Gan v. City of New York, 996 F.2d 522, 536 (2d Cir. 1993) (quoting Baez v. Hennessy, 853 F.2d 73, 77 (2d Cir. 1988)); see Rich v. New York, No. 21-CV-3835

(AT), 2022 WL 992885, at *5 n.4 (S.D.N.Y. Mar. 31, 2022) ("[A]ny claims [the p]laintiff may raise against the [District Attorney] Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment."); see also Gentry v. New York, No. 1:21-CV-0319 (GTS/ML), 2021 WL 3037709, at *6 (N.D.N.Y. June 14, 2021) (recommending dismissal of the plaintiff's claims against the defendant assistant district attorneys in their official capacities, which were effectively claims against the State of New York, as barred by the Eleventh Amendment), report and recommendation adopted, 2021 WL 3032691 (N.D.N.Y. July 19, 2021).

Here, plaintiff claims that Borden and Sprague "made the choice to allow [p]laintiff's right to a speedy trial be impeded." Compl. at 12, ¶73. Plaintiff specifically alleges that Borden "gave instructions [and demands] to Mr. James Hyde IV, an attorney of the Essex County Public Defender's Office, . . . who did not represent [plaintiff]" during plaintiff's February 16, 2023, arraignment.[14] Id. at 5, ¶¶29-31. However, because plaintiff's allegations against Borden and Sprague[15] "relate to non-investigative actions" taken in their capacities as prosecutors, Borden and Sprague are absolutely immune from suit in their individual capacity. Linder, 2023 WL 6810098 at *4 (citing Simon, 727 F.3d at 171); see, e.g., Golston v. Cortese, No. 1:21-CV-914

---

[14] The undersigned notes that plaintiff appears to have raised similar claims against Borden in another, separate matter. See Lewis v. Essex Cnty., 8:23-CV-01636 (TJM/CFH) (N.D.N.Y. filed Dec. 26, 2023), Dkt. No. 9 at 18 ("[P]laintiff claims that, when he appeared pro se for an arraignment before Justice Dietrich on or around February 16, 2023, Borden challenged his pro se status. . . . Plaintiff alleges that Borden 'wished for [p]laintiff to be assigned to an Essex County Public Defender[,]' which 'was against [p]laintiff's wishes and Constitutional rights.'"). The undersigned similarly recommended the dismissal of such claims on the basis of prosecutorial immunity. See id.

[15] Moreover, although plaintiff lists Sprague as a defendant, he does not specify how she was personally involved in the alleged deprivation of his constitutional rights. See generally Compl.; see also Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."); Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996) ("[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because [s]he held a high position of authority.") (citations omitted).

(GTS/CFH), 2022 WL 2657290, at *5 (N.D.N.Y. Apr. 1, 2022) ("To the extent [the] plaintiff alleges actions associated with [the prosecutor's] function as an advocate . . . , [the prosecutor] is absolutely immune from suit in his individual capacity."), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u>, 2022 WL 2071773 (N.D.N.Y. June 9, 2022).

To the extent plaintiff seeks to bring a claim against Borden and Sprague in their official capacities, such claim is without merit.  As indicated above, "when a district attorney is sued for damages in his official capacity, the suit is deemed to be a suit against the state," and, thus, the official has "the Eleventh Amendment immunity belonging to the state."  <u>McKeon v. Daley</u>, 101 F. Supp. 2d 79, 86 (N.D.N.Y. 2000), <u>aff'd</u>, 8 F. App'x 138 (2d Cir. 2001) (summary order).  Accordingly, it is recommended that all claims alleged against Borden and Sprague, in their individual and official capacities, be dismissed.

## 2. § 1983 Claims

### a. State Action

Plaintiff contends that Hyde, Hadden, the Essex County Public Defender's Office, and the Essex County Conflict Defender's Office violated his rights under the Sixth and Fourteenth Amendments.  <u>See</u> Compl. at 5-8, 12-15.  However, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).  "The traditional definition of acting under color of state law requires that the defendant . . . exercise[ ] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  <u>Id.</u> at 49 (internal quotation marks

and citation omitted).  "Because the United States Constitution regulates only the

Government, not private parties, [with respect to a claim brought under § 1983,] a

litigant claiming that his constitutional rights have been violated must first establish that

the challenged conduct constitutes 'state action.'"  Flagg v. Yonkers Sav. & Loan Ass'n,

396 F.3d 178, 186 (2d Cir. 2005) (quoting United States v. Int'l Brotherhood of

Teamsters, 941 F.2d 1292, 1295 (2d Cir. 1991)); see Baum v. N. Dutchess Hosp., 764

F. Supp. 2d 410, 419 (N.D.N.Y. 2011) ("State action is an essential element of any §

1983 claim.") (citing Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 934 (1982)

(explaining that the "under color of any statute" language is to enforce the provisions of

the Fourteenth Amendment and that if a defendant's conduct satisfies the state-action

requirement then that conduct is also action under color of state law under § 1983), and

Rounseville v. Zahl, 13 F.3d 625, 627-28 (2d Cir. 1994) (noting the state action

requirement for § 1983)).

      "Private parties generally are not state actors and therefore are not usually liable

under [§] 1983."  Yi Sun v. Saslovsky, No. 1:19-CV-10858 (LTS), 2020 WL 6828666, at

*7 (S.D.N.Y. Aug. 6, 2020) (citing Sykes v. Bank of America, 723 F.3d 399, 406 (2d Cir.

2013)); see Basile v. Connolly, 538 F. App'x 5, 7 (2d Cir. 2013) (summary order)

("[P]rivate individuals . . . cannot be sued under 42 U.S.C. § 1983 absent a plausible

allegation that they acted under color of state law.").  "A private party's actions can be

considered state action in three situations":

            (1) the private party acts using the coercive power of the
            state or is controlled by the state (the "compulsion test");
            (2) the private party willfully participates in joint activity with
            the state or its functions are entwined with state policies (the
            "joint action" or "close nexus" test); or (3) the state has

31

delegated a public function to the private party (the "public
function" test).

Rogers v. City of New Rochelle, No. 1:19-CV-0479 (CM), 2019 WL 5538031, at *2

(S.D.N.Y. Oct. 25, 2019) (quoting Fabrikant v. French, 691 F.3d 193, 207 (2d Cir.

2012)).  "The fundamental question under each test is whether the private party's

challenged actions are 'fairly attributable' to the State."  Id. (quoting Rendell-Baker v.

Kohn, 457 U.S. 830, 838 (1982)).  "[A] State normally can be held responsible for a

private decision . . . when it has . . . provided such significant encouragement, either

overt or covert, that the choice must in law be deemed to be that of the State."  Blum v.

Yaretsky, 457 U.S. 991, 1004 (1982) (citations omitted).  The State's "[m]ere approval of

or acquiescence in the initiatives of a private party[, however,] is not sufficient to justify

holding the State responsible for those initiatives."  Id. at 1004-05.

    "Absent special circumstances suggesting concerted action between an attorney

and a state representative," "a private attorney's legal representation of a private

person, however, does not constitute state action for the purpose of stating a claim

under [§] 1983 against that attorney, regardless of whether that attorney is privately

retained, court-appointed, or employed as a public defender."  Masri v. Liebowitz, No.

1:24-CV-1284 (LTS), 2024 WL 1639904, at *9 (S.D.N.Y. Apr. 15, 2024) (citing Adickes

v. S.H. Kress & Co., 398 U.S. 144, 152 (1970), and Bourdon v. Loughren, 386 F.3d 88,

90 (2d Cir. 2004)); see O'Donoghue v. United States Soc. Sec. Admin., 828 F. App'x

784, 787 (2d Cir. 2020) (summary order) ("Private attorneys are generally not 'state

actors' for purposes of § 1983.") (citing Rodriguez, 116 F.3d at 65-66); see also Shorter

v. Rice, No. 12-CV-0111 (JFB/ETB), 2012 WL 1340088, at *4 (E.D.N.Y. Apr. 10, 2012)

("[I]t is axiomatic that neither public defenders, such as Legal Aid attorneys, nor court-

appointed counsel, nor private attorneys, act under the color of state law merely by virtue of their position."); Manko v. Steinhardt, No. 11-CV-5430 (KAM/LB), 2012 WL 213715, at *4 (E.D.N.Y. Jan. 24, 2012) (collecting cases and noting that "[i]t is well-settled that private attorneys and law firms . . . do not act under color of state law and are not state actors for purposes of [§] 1983 simply by virtue of their state-issued licenses to practice law").

Here, plaintiff claims that Hyde, representing the Essex County Public Defender's Office, "did nothing to protect [his] interests and the truth" in plaintiff's case; "allowed the Court to adjourn hearings multiple times"; "did not file [a] motion as promised"; "made the choice to allow [p]laintiff's right to a speedy trial be impeded"; and improperly withdrew from representation. Compl. at 6-8, 12, 14-15. Plaintiff further alleges that Hadden was unlawfully assigned to represent plaintiff after Hyde withdrew from his case, and she, while representing the Essex County Conflict Defender's Office, "displayed an ineptitude surrounding the facts of [plaintiff's] case"; was "annoying and a cause of emotional disturbance"; "overwhelm[ed] . . . [p]laintiff" with "one hundred and eighteen emails (118)"; made a "sinister attempt to take credit for [his] work while she was, in fact, unwanted stand by counsel"; and failed to "provide full court records to [p]laintiff prior to trial." Id. at 7, 14-15.

Plaintiff claims that both Hyde and Hadden were "acting under the color of state law when" they allegedly injured him; "[h]owever, it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983." Compl. at 14; Rodriguez, 116 F.3d at 65-66 (2d Cir. 1997) (citing Housand v.

Heiman, 594 F.2d 923, 924-25 (2d Cir. 1979) (per curiam), and Polk County v. Dodson,

454 U.S. 312, 325 (1981)); see, e.g., Sash v. Rosahn, 450 F. App'x 42, 43 (2d Cir.

2011) (summary order) ("[A] court-appointed criminal defense attorney does not act

under color of state law when representing a client[.]"); Rzayeva v. United States, 492 F.

Supp. 2d 60, 81 (D. Conn. 2007) (dismissing § 1983 claim against a court-appointed

attorney because "[t]he fact that an individual is appointed by the state and paid with

state funds is insufficient to render an individual a state actor"); Oshintayo v. Krause,

No. 3:19-CV-0253 (DNH/DEP), 2019 WL 1877438, at *5 (N.D.N.Y. Apr. 1, 2019)

("Defendant Baker, a public defender, is an individual who was performing a non-

governmental function when representing plaintiff in connection with his criminal

prosecution.  While the office that employs defendant Baker may be publicly funded, he

was conducting himself as a private actor.  It is well-established that 'public defenders

or court-appointed defense attorneys do not act under color of law.'") (citations omitted),

report and recommendation adopted, 2019 WL 1877172 (N.D.N.Y. Apr. 26, 2019);

Brooks v. New York State Supreme Ct., App. Div. First Dep't, No. 02-CV-4183 (RR),

2002 WL 31528632, at *3 (E.D.N.Y. Aug. 16, 2002) ("Section 1983 'was enacted to

redress civil rights violations by persons acting under color of State law' and should not

be used by clients disappointed with the performance of their attorneys.  Complaints

about the behavior or performance of an attorney should be addressed to the Grievance

Committee of the appropriate State Appellate Division.") (quoting Mitchell v. Cohen, No.

90-CV-1836 (TCP), 1990 WL 100254, at *1 (E.D.N.Y. Jun. 13, 1990)), aff'd sub nom.

Brooks v. Ross, 76 F. App'x 356 (2d Cir. 2003) (summary order).

Moreover, plaintiff alleges no facts showing that Hyde or Hadden acted "using the coercive power of the state or is controlled by the state," "willfully participate[d] in joint activity with the state or . . . [is] entwined with state policies," or that "the state has delegated a public function to [him or her]."  Rogers, 2019 WL 5538031, at *2; see Schoch v. Scattaretico-Naber, No. 7:24-CV-2294 (CS), 2024 WL 2221383, at *4-5 (S.D.N.Y. May 16, 2024) (dismissing the plaintiff's § 1983 claims against his private attorneys because the plaintiff failed to establish that the attorneys acted as state actors); see also Jones v. Roth, No. 23-CV-9831 (LTS), 2024 WL 54160, at *3 (S.D.N.Y. Jan. 2, 2024) ("As Defendant Roth is a private attorney who is not alleged to work for any state or other government body, Plaintiff cannot state a claim against her under [§] 1983."); Eggsware v. Doe, No. 1:22-CV-54 (BKS/CFH), 2022 WL 827640, at *5 (N.D.N.Y. Feb. 7, 2022) (dismissing the plaintiff's § 1983 claims where "there is nothing in the complaint to suggest that any of the potential wrongful actors are 'state actors' or that they are 'collaborating' with state actors"), report and recommendation adopted, 2022 WL 823646 (N.D.N.Y. Mar. 18, 2022).

With regard to plaintiff's claims against the Essex County Public Defender's Office and the Essex County Conflict Defender's Office, the complaint sets forth no specific factual allegations.  See Compl. at 12-16.  "Thus, it is unclear what the basis is for [p]laintiff's inclusion of the [the Essex County Public Defender's Office and the Essex County Conflict Defender's Office] as [ ] defendant[s] in this action."  Washington v. Broome Cnty. Dist. Attorney's Off., No. 3:20-CV-1099 (GLS/ML), 2020 WL 9455048, at *6 (N.D.N.Y. Nov. 24, 2020), report and recommendation adopted, 2021 WL 1660480 (N.D.N.Y. Apr. 28, 2021).  "However, to the extent that it is based on actions taken by

employees of the [the Essex County Public Defender's Office and the Essex County Conflict Defender's Office] performing traditional functions as counsel to [p]laintiff . . . , [these are] not . . . state actor[s] amenable to suit pursuant to 42 U.S.C. § 1983." Id. Moreover, the Essex County Public Defender's Office and the Essex County Conflict Defender's Office are not considered "persons" under 42 U.S.C. § 1983.  See Owens v. Connecticut, No. 3:24-CV-79 (VDO), 2024 WL 1576779, at *3 (D. Conn. Apr. 11, 2024) ("[T]he Connecticut Office of the Public Defender is not considered a person under 42 U.S.C. § 1983."); see also Franklin v. Chenango Cnty. Pub. Def. Off., No. 3:18-CV-0865 (BKS/DEP), 2018 WL 4288620, at *4 (N.D.N.Y. Sept. 7, 2018) ("The Office of the Chenango County Public Defender, as distinct from the Public Defender as an individual, is not a person amenable to suit under section 1983."), report and recommendation adopted, 2018 WL 5792758 (N.D.N.Y. Nov. 5, 2018).

It is, therefore, recommended that plaintiff's claims against Hyde, Hadden, the Essex County Public Defender's Office, and the Essex County Conflicts Defender's office be dismissed.

### b. Municipal Liability

Plaintiff also names the Town of North Elba, the Village of Lake Placid, and Essex County as defendants.  See generally Compl.  "To set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead that a deprivation of his constitutional rights was 'caused by a governmental custom, policy, or usage of the municipality.'"  Dougal, 2023 WL 6430586, at *10 (quoting Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012), and citing Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690-91 (1978)).  "Municipalities may only be held liable when the

municipality itself deprives an individual of a constitutional right; it 'may not be held liable on a theory of respondeat superior.'"  Id. (quoting Jeffes v. Barnes, 208 F.3d 49, 56 (2d Cir. 2000)).  An "official policy or custom" of the municipality can be shown in several ways:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a "custom or usage" sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to "deliberate indifference" to the rights of those who come in contact with the municipal employees.

Dorsett-Felicelli, Inc. v. Cnty. of Clinton, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (citations omitted).  "[M]ere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details." Tieman v. City of Newburgh, No. 13-CV-4178, 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015); see Oklahoma City v. Tuttle, 471 U.S. 808, 809 (1985) ("There must at the very least be an affirmative link between the municipality's policy and the particular constitutional violation alleged.").

Critically, "a prerequisite to municipal liability under Monell is an underlying constitutional violation by a state actor."  Henry-Lee v. City of New York, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010).  As the Second Circuit has noted, "Monell does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent

constitutional violation." Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) (noting that once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell [is] entirely correct"); see Mendes v. Cunningham, No. 3:21-CV-1527 (JAM), 2022 WL 2104515, at *4 (D. Conn. June 10, 2022) ("In any event, I need not consider whether Mendes's allegations satisfy Monell because Mendes has not alleged any plausible underlying constitutional violation").

Plaintiff generally contends that the Town of North Elba, the Village of Lake Placid, and Essex County violated his rights under § 1983. See generally Compl. However, as discussed, plaintiff has failed to state a claim that a person, who is not entitled to absolute immunity, acted under the color of state law when they deprived him of a constitutional right. See discussion supra Subsection II.C.1,2.a; see also Mugabo v. Wagner, No. 22-CV-930-A, 2024 WL 1621534, at *4 (W.D.N.Y. Apr. 15, 2024) (citing Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993)). Thus, plaintiff has failed to state an underlying constitutional violation sufficient to support a municipal liability claim. See Dees v. Zurlo, No. 1:24-CV-0001 (MAD/DJS), 2024 WL 1053237, at *14 (N.D.N.Y. Mar. 11, 2024) ("A fundamental requirement of a Monell claim is the establishment of an underlying constitutional violation. . . . In the present case the Court is recommending the dismissal of all the federal claims and, as such, also recommends that any Monell claim be likewise dismissed.") (citations omitted), report and recommendation adopted, 2024 WL 2291701 (N.D.N.Y. May 21, 2024); see also Holyoke v. S.S.I., No. 6:23-CV-1557 (MAD/ATB), 2024 WL 20726, at *6 (N.D.N.Y. Jan. 2, 2024) (dismissing the plaintiff's municipal liability claims against the City of Utica and Oneida County for, inter

alia, failing to plausibly allege an underlying constitutional violation), report and recommendation adopted, 2024 WL 689117 (N.D.N.Y. Feb. 20, 2024).

Even if, arguendo, plaintiff had alleged an underlying constitutional violation, he has failed to identify or allege any facts showing the existence of a municipal policy or custom of the Town of North Elba, the Village of Lake Placid, or Essex County which caused his alleged constitutional violations.  See Boyde v. New York, No. 5:16-CV-555 (LEK/TWD), 2016 WL 3573133, at *4 (N.D.N.Y. May 19, 2016) (dismissing on § 1915 review the plaintiff's complaint against Onondaga County and the City of Syracuse because the plaintiff "failed to identify or allege any facts showing the existence of a municipal policy or custom . . . which caused his alleged false arrest [and other constitutional violations]"), report and recommendation adopted, 2016 WL 3580768 (N.D.N.Y. June 28, 2016); see also Meyers v. Becker, No. 1:23-CV-173 (DNH/CFH), 2023 WL 4424128, at *4 (N.D.N.Y. May 31, 2023) (concluding that the plaintiff's complaint was "insufficient to allege a claim for municipal liability" because the "[p]laintiff does not state what Schoharie County's alleged policy was or how it negatively impacted [him]").

Plaintiff also has not alleged facts plausibly showing that the Town of North Elba, the Village of Lake Placid and Essex County failed to properly hire, supervise, and train subordinates in connection with his claims.  See Dougal, 2023 WL 6430586, at *10 (dismissing on § 1915 review the plaintiff's complaint against Saratoga County because the plaintiff did "not include any allegations in his complaint concerning municipal conduct that states a Monell claim"); see also Syfert v. City of Rome, No. 6:17-CV-0578 (GTS/TWD), 2018 WL 3121611, at *7 (N.D.N.Y. Feb. 12, 2018) (collecting cases

39

dismissing <u>Monell</u> claims where the complaint contains no factual support for the existence of an unconstitutional policy or custom and only conclusory allegations referencing a failure to train), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u>, 2018 WL 2316681 (N.D.N.Y. May 22, 2018), <u>aff'd</u>, 768 F. App'x 66 (2d Cir. 2019) (summary order).  Thus, he has failed to state a municipal liability claim against the Town of North Elba, the Village of Lake Placid, and Essex County, and it is, therefore, recommended that such claims be dismissed.

### 3. State Law Claims

Plaintiff seeks to bring state law negligent infliction of emotional distress ("NIED") claims against Justice Dietrich, Hayes, Merrihew, the Town of North Elba, and Essex County.  <u>See</u> Compl. at 17-19.  A district court has discretion to hear state law claims where the relationship between a plaintiff's federal and state claims present "but one constitutional case" and "derive from a common nucleus of operative fact."  <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725 (1966); <u>see</u> <u>Petaway v. City of New Haven Police Dep't</u>, 541 F. Supp. 2d 504, 515 (D. Conn. 2008) ("Supplemental or pendent jurisdiction is a matter of discretion, not of right.") (citation omitted).  "If 'plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding,' the court will generally exercise supplemental jurisdiction if 'judicial economy, [and] convenience and fairness to litigants' weigh in favor of hearing the state claims at the same time."  <u>Forbes v. City of Rochester</u>, 612 F. Supp. 3d 159, 170-71 (W.D.N.Y. 2020) (quoting <u>United Mine Workers</u>, 383 U.S. at 726); <u>see</u> <u>also</u> 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action

within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). Plaintiff's NIED claims derive from the same operative facts as the federal claims he seeks to bring. Should plaintiff successfully amend his complaint and if, following § 1915 review of the amended complaint, any federal law claims are permitted to proceed, the Court may choose to exercise supplemental jurisdiction over his state law NIED claims.

Under New York Law, an NIED claim requires a showing that the plaintiff "suffer[ed] emotional distress caused by defendant's breach of a duty which unreasonably endangered [plaintiff's] own physical safety." Baker v. Dorfman, 239 F.3d 415, 421 (2d Cir. 2000) (internal quotation marks and citation omitted); see, e.g., De Rosa v. Stanley B. Michelman, P.C., 584 N.Y.S.2d 202, 203 (App. Div. 1992) (explaining that, to state a cognizable claim for NIED, a complaint must allege, inter alia, that the defendant's conduct "unreasonably endangers the plaintiff's physical safety"). The duty in question "must be specific to the plaintiff, and not some amorphous, free-floating duty to society." Dzwonczyk v. Syracuse City Police Dep't, 710 F. Supp. 2d 248, 272 (N.D.N.Y. 2008). "This duty is far more specific than the more generalized duty to avoid negligently injuring another." Druschke v. Banana Republic, Inc., 359 F. Supp. 2d 308, 315 (S.D.N.Y. 2005); see also Hazan v. City of New York, No. 98-CV-1716, 1999 WL 493352, at *5 (S.D.N.Y. July 12, 1999) ("Although the City [of New York] has a general duty to prevent its police force from inflicting unreasonable harm on society at large, this duty was not a special one owed specifically to the plaintiff") (internal citations omitted).

To the extent plaintiff brings NIED claims against Dietrich, Hayes, and Merrihew, they are absolutely immune from suit.  See discussion supra II.C.1.a,b.  In any event, plaintiff does not allege that Dietrich, Hayes, or Merrihew placed him in any physical danger.  See Nova v. Smith, No. 9:19-CV-0072 (GTS/TWD), 2019 WL 2636817, at *3 (N.D.N.Y. June 27, 2019) ("Because the amended complaint in this case does not allege that [the] defendant . . . placed [the] plaintiff in any physical danger, [the] plaintiff's NIED claims are dismissed for failure to state a claim upon which relief may be granted"), on reconsideration in part, 2019 WL 5295165 (N.D.N.Y. Oct. 18, 2019); see also Waterbury v. New York City Ballet, Inc., 168 N.Y.S.3d 417, 427 (App. Div. 2022) (affirming the dismissal of the plaintiff's NIED claim because "[g]enerally, this cause of action requires that the plaintiff either be placed in physical danger or reasonably fear that she has been" and "[t]here [was] no allegation that [the plaintiff had] been placed in physical danger").  Plaintiff also does not assert any special duty Dietrich, Hayes, or Merrihew owed to him, aside from their general duties to the public as Town Justice and court clerks.  See Burroughs v. Mitchell, 325 F. Supp. 3d 249, 285 (N.D.N.Y. 2018) ("Upon review, Burroughs has failed to allege any special duty owed to him by defendants aside from the general duty to all inmates not to use excessive force that violates their constitutional rights.").  Accordingly, it is recommended that plaintiff's NIED claims against Dietrich, Hayes, and Merrihew be dismissed.

Plaintiff also seeks to bring an NIED claim against the Town of North Elba for Hayes' and Dietrich's conduct, as well as against Essex County for Merrihew's conduct.  See Compl. at 17-19.  However, "'[a] municipality cannot be sued for common law negligence unless the municipality owed a special duty to the plaintiff.'"  Ellis v.

Washington, 409 F. Supp. 3d 148, 155 (W.D.N.Y. 2019) (quoting Paul v. City of New York, No. 16-CV-1952 (VSB), 2017 WL 4271648, at *9 (S.D.N.Y. Sept. 25, 2017)). "Such a special duty arises when there exists a special relationship between the governmental entity and the plaintiff." Henry-Lee, 746 F. Supp. 2d at 564 ("A special relationship exists in three circumstances: (1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation.") (citations and internal quotation marks omitted). "The duty must be more than one the municipality owed to the public generally." Paul, 2017 WL 4271648, at *9 (citing Valdez v. City of New York, 936 N.Y.S.2d 587, 593-96 (2011)).

Here, plaintiff has not asserted a special duty or relationship between himself and the Town of North Elba or Essex County. See, e.g., Karcz v. City of N. Tonawanda, No. 20-CV-9V (SR), 2023 WL 2654210, at *4 (W.D.N.Y. Feb. 24, 2023) (dismissing the plaintiff's NIED claim where the plaintiff "failed to allege a special duty as required for a negligent infliction of emotional distress claim"), report and recommendation adopted, 2023 WL 2652486 (W.D.N.Y. Mar. 27, 2023). Specifically, there are no allegations in his complaint that could support a finding of a special relationship between plaintiff and the Town of North Elba or Essex County beyond the duty owed by the Town of North Elba and Essex County to the public at large. See Bryant v. Ciminelli, 267 F. Supp. 3d 467, 479 (W.D.N.Y. 2017) (dismissing the plaintiff's NIED claim against the City of Rochester because the "[p]laintiff has not alleged any special duty between [the City]

43

and himself[; p]laintiff only allege[d] that [the City] owed him a duty of care—the same duty which would be owed to the general public"); see also Hunter v. Cnty. of Orleans, No. 12-CV-6173, 2013 WL 6081761, at *6 (W.D.N.Y. Nov. 19, 2013) (granting summary judgment on the plaintiff's negligence claim against the county where no special relationship was established).  Thus, it is recommended that any NIED claims against the Town of North Elba or Essex County be dismissed.

### III. Leave to Amend

Generally, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted).  "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.'"  Edwards v. Penix, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)).  Insofar as Justice Dietrich, Duffy, Hayes, Merrihew, Quinn, Borden, and Sprague are absolutely immune from suit, it is recommended that all claims against them be dismissed with prejudice and without leave to amend.  See discussion supra Subsection II.C.1.  Similarly, because Hyde, Hadden, the Essex County Public Defender's Office, and the Essex County Conflict Defender's Office are not considered to be persons acting under the color of state law sufficient to state a claim under § 1983, it is recommended that the claims against them also be dismissed with prejudice and without leave to amend.  See discussion supra Subsection II.C.2.a; see, e.g., Dougal,

2023 WL 6430586, at *6 (dismissing the plaintiff's § 1983 claim against his defense attorney with prejudice and without leave to amend because the defense attorney was not a state actor).

As for the § 1983 claims against the Town of North Elba, the Village of Lake Placid, and Essex County, it is recommended that they be dismissed without prejudice and with leave to amend should plaintiff wish to attempt to plead proper <u>Monell</u> claims, including identifying an underlying constitutional violation giving rise to the purported municipal liability.[16]  <u>See</u> discussion <u>supra</u> Subsection II.C.2.b; <u>see also</u> <u>Holyoke</u>, 2024 WL 20726, *8 ("With respect to defendants City of Utica and Oneida County, while skeptical, this court is constrained to recommend affording the pro se plaintiff an opportunity to amend his complaint. . . . Thus, the court recommends granting plaintiff the limited opportunity to amend his complaint to allege, if he can, that he suffered an underlying tort in violation of federal law committed by an individual municipal actor or actors, and that that their commission of the tort resulted from a custom or policy of Oneida County or the City of Utica.").  Further, as for the state law tort claims against the Town of North Elba and Essex County, it is recommended that they be dismissed without prejudice and with leave to amend should plaintiff wish to plead a proper claim for NIED.  <u>See</u> discussion <u>supra</u> Subsection II.C.3.

---

[16] Any amended pleading supersedes and replaces a prior pleading in its entirety.  In the event the District Judge adopts the undersigned's recommendation and plaintiff amends his complaint, plaintiff is advised that any amended pleading cannot incorporate a prior pleading by reference.  <u>See, e.g.</u>, <u>Anthony v. Fein, Such & Crane, LLC</u>, No. 5:15-CV-00452 (DNH/TWD), 2015 WL 7749894, at *5 (N.D.N.Y. Sept. 22, 2015) ("[I]n the event Plaintiff is granted leave to amend, he be instructed that the amended complaint will take the place of and effectively invalidate Plaintiff's second amended complaint"), <u>report and recommendation adopted</u>, 2015 WL 7738048 (N.D.N.Y. Dec. 1, 2015).  Further, an amended complaint may not replead any claims or defendants dismissed by this Court with prejudice.  An amended pleading must establish this Court's jurisdiction and state a claim for relief against each named defendant for which leave to replead was granted according to Rules 8 and 10 of the Federal Rules of Civil Procedure.

## IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. Nos. 2 and 5) is **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's claims against Justice Dietrich, Duffy, Hayes, Merrihew, Quinn, Borden, Sprague, Hyde, Hadden, the Essex County Public Defender's Office, and the Essex County Conflict Defender's Office be **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that plaintiff's § 1983 municipal liability claims against the Town of North Elba, the Village of Lake Placid, and Essex County be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED**, that plaintiff's negligent infliction of emotional distress claims against the Town of North Elba and Essex County be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**; and it is

**RECOMMENDED**, that, if the District Judge adopts this Report-Recommendation and Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file an amended complaint, and if plaintiff does not file an amended complaint, it will be deemed as an abandonment of all claims for which leave to replead has been granted and will result in judgment being entered against plaintiff on these claims without further order by the Court; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72.[17]

Dated:  June 18, 2024
　　　　Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[17] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(c).